## THOMAS O. H. P. BURNHAM vs. DAVID NEVINS.

Suffolk.   Jan. 20. — Feb. 25, 1887.   HOLMES & GARDNER, JJ.,
absent.

A., the owner of a parcel of land in a city at the corner of two streets, laid it out in lots, with a passageway five feet wide in the rear of three of the lots, and on one side of the fourth lot, running to one of the streets. In 1832 he conveyed one of the lots to B., with "a right and privilege in common with me, my heirs and assigns, in a five feet passageway," reserving to himself, his heirs and assigns, the right of using the passageway in common with the grantee. On the same day he conveyed the fourth lot to P., giving him "the right of use in common with the abutters thereon" of the passageway. Later in the same year he conveyed another lot to C., with a right of use, in common with the other abutters, of the passageway, "for any and all purposes at any and all times." In 1837, while A. still owned the remaining lot, P. built a house on his lot, with twenty-two windows opening on the passageway, and these have so remained, without objection from the other abutters, to the present time. In 1885, D., the grantee of the last lot owned by A., built bay-windows over the passageway, to which he had title in fee subject to the rights of the abutters thereon. These windows interfered with light and air in the passageway, but did not interfere with passage on foot to B.'s land. *Held*, on a bill in equity by a grantee of B., that D. had not interfered with the plaintiff's rights in the passageway.

BILL IN EQUITY, filed May 6, 1886, alleging the following facts:

In 1832 Israel Thorndike was seised in fee of a parcel of land in Boston, at the corner of Beacon Street and Belknap Street, now Joy Street, shown on a plan (a sketch of a part of which is printed in the margin of the opposite page); and laid out a passageway, five feet wide, running westerly from Belknap Street over the rear portions of lots 1 and 2.

On July 11, 1832, Thorndike conveyed lot 2 to Abigail Joy and another, "together with all the rights, easements, privileges, and appurtenances to the granted premises belonging, particularly a right and privilege in common with me, my heirs and assigns, in a five feet passageway leading from the northeasterly corner of said land to said Belknap Street, and reserving to me, my heirs and assigns forever, the right and privilege of using as a passageway in common with said grantees, their heirs and assigns, a strip of land five feet wide across the northerly end of said granted premises, the said passageway to be maintained and

supported at the common expense of the several abutters." This lot is now owned by the plaintiff.

On the same day Thorndike conveyed lot 4 to Thomas H. Perkins, bounding it southerly in part on the passageway, "with all rights and privileges to the same belonging, particularly to the right of use in common with the abutters thereon of the said five-foot passageway on the south boundary to the distance of ninety-five feet from Belknap Street."

On October 13, 1832, Thorndike conveyed lot 3 on Beacon Street to one Clark, "together with the right of use forever in common with the other abutters thereon of a five feet passageway . . . . to Belknap Street, for any and all purposes at any and all times."

Beacon Street.

In 1837 Thorndike mortgaged lot 1 to one Upham, "subject to all existing rights lawfully enjoyed in a five feet passageway across the northerly part of said premises." *

The plaintiff derives his title to lot 2 by a deed executed in 1882, which contains this clause: "The premises are conveyed with the benefit of and subject to a five feet passageway running across the rear of said parcel."

The defendant derives his title to lot 1 by a deed executed in 1885, which conveys the land, "subject to such rights as any person or persons legally have in and over a passageway five feet in width running from said Joy Street westerly across the northerly end of said land."

Said passageway was designed to be used, and heretofore for many years and since the laying out of said passageway has been used, by the several abutters thereon, for the purposes of passage, air, light, ventilation, and prospect, for the delivery of supplies and the removal of refuse matter, and for the ordinary and usual purposes of a passageway, including, among other things, access in case of fire and for purposes of building; and the plaintiff, for the due and proper enjoyment of all of said and similar purposes, is entitled to have said passageway kept open and unobstructed to Joy Street, and from the ground upward, for its full width of five feet, and to use and enjoy the same for all of said and similar purposes, as he has heretofore done, and has a right to do.

The defendant, who is erecting an apartment house upon lot 1, the rear wall of which apartment house extends up to the line of said passageway, is putting out two rows of bay-windows on the rear wall of said apartment house, overlooking and jutting out and projecting over said passageway, as follows :

The row of bay-windows nearest Joy Street projects over said passageway for a distance of eighteen inches beyond the face of the brickwork of said rear wall from a point seven feet nine and a half inches above the level of the said passageway, and is sixty-five feet six inches in height, and fourteen feet six inches wide. The other row of bay-windows projects over said passageway

---

* The bill did not allege, and it did not appear, that the defendant derived his title through this mortgage.

for a distance of thirteen and a half inches beyond the face of the brickwork of said rear wall of said apartment house from a point seven feet three inches above the level of said passageway, and is sixty-five feet six inches in height and eight feet and ten inches wide.

The prayer of the bill was that the court would decree that the plaintiff is lawfully entitled, for the uses and purposes hereinbefore named, to have said five-foot passageway kept open and unobstructed to Joy Street, and from the ground .upward, for its full width of five feet; and that the plaintiff be restrained from permitting said two rows of bay-windows, or any part thereof, from jutting out into and projecting over said five-foot passageway.

On May 25, 1886, the plaintiff had leave to amend his bill by alleging that, prior to 1837, while Thorndike was the owner of lot 1, Perkins erected on lot 4 a brick dwelling-house four stories in height, fronting on Belknap Street, and bordering on said passageway; that said house, without objection, was erected with windows on every story, opening on said passageway, which windows, twenty-two in all, have remained and been enjoyed by the owners and occupants of said house until the present time, without objection from the other abutters on said passageway.

The answer alleged that said passageway was designed for the ordinary and usual purposes of a city passageway of that width leading to the rear of dwelling-houses and closed at one end; denied that it was designed to be used for light, air, ventilation, and prospect, or for access in case of fire, or for the purpose of building. It further admitted, for the purpose of the case, if competent as evidence, that the owner on the opposite side of said passageway opened windows as stated; but alleged that any use of said passageway for light, air, prospect, or ventilation was merely incidental, and not matter of right; and denied that said passageway was ever used for access in case of fire or in case of building, except that the defendant had used that part of said way on his own land in erecting the present building; and admitted that, if occasion had arisen, the said way would have been used without objection for purpose of access for building, or in case of fire.

The case was heard on the bill and answer, by *W. Allen*, J., who ordered a decree to be entered dismissing the bill. The plaintiff appealed to the full court.

*H. D. Hyde*, for the plaintiff.

*F. V. Balch & F. Rackemann*, for the defendant.

MORTON, C. J. The defendant does not deny that the plaintiff has the right to use the passageway as a means of access to his lot from Joy Street. The question in the case is as to the extent of this right, and whether, in projecting bay-windows over the passageway in the manner alleged in the bill, the defendant is violating this right. The windows do not interfere with passing to and fro over the passageway. The bill alleges that there are two rows of windows, one beginning seven feet and nine and a half inches above the level of the passageway, extending upward sixty-five and a half feet, being fourteen and a half feet wide, and projecting eighteen inches over the passageway; and the other beginning seven feet and three inches above the level of the passageway, being of the same height, eight feet and ten inches wide, and projecting over the passageway thirteen and a half inches. Such windows do not materially interfere with the use of the passageway for the ordinary purposes of passing on foot; but if the plaintiff has, as he contends, the right to have the passageway kept open and unobstructed from the ground upward for its full width of five feet, for the purposes of light and air, it is clear that his rights have been invaded by the acts of the defendant.

The various cases which have arisen as to the right of the owner of land, subject to a right of way, to build or project structures over the way, have all been decided upon the same general principles. The difference in the results arises from the application of these principles to a difference in the grants by which the way is created, and in the other circumstances of the cases.

These general principles are, that a man who owns land subject to an easement has the right to use his land in any way which is not inconsistent with the easement, but has no right to use it in a way which is inconsistent with the easement; and that the extent of the easement claimed must be determined by the true construction of the grant or reservation by which it is created, aided by any circumstances surrounding the estate and the parties

which have a legitimate tendency to show the intention of the parties.

In the leading case of *Atkins* v. *Bordman*, 2 Met. 457, it was held that a passageway about five feet in width, running from Washington Street to rear land owned by the plaintiff, might be built over by the owner of the front land. The court held that, by the true construction of the grant under which the plaintiff claimed, he acquired merely the right of "a suitable and convenient footway to and from the grantor's dwelling-house, of suitable height and dimensions to carry in and out furniture, provisions, and necessaries for family use, and to use for that purpose wheelbarrows, hand-sleds, and such small vehicles as are commonly used for that purpose in passing to and from the street to a dwelling in the rear, through a foot passage, in a closely built and thickly settled town." 2 Met. 468. It was therefore adjudged that the owner of the fee might build over the way in a manner which did not render it unfit for these purposes.

This decision was followed in *Gerrish* v. *Shattuck*, 132 Mass. 235, in which the reservation to the plaintiff was of "a passageway four feet wide in, through, and over said premises from said Prescott Street to my tenement on the westerly side thereof." It was held that this reserved a footway for passing and repassing, with such incidental rights as are necessary to its enjoyment; and that the owner of the servient premises might build over it in such manner as not to interfere with these purposes.

In the case of *Schwoerer* v. *Boylston Market Association*, 99 Mass. 285, it was clear that the passageway could not be built over, because the grant to the plaintiff expressly provided that it should not be "subject to have any fence or building erected thereon," and because the other parts of the deed and the facts of the case show that the intention of the parties was that it should be in the nature of an open court or street.

In *Brooks* v. *Reynolds*, 106 Mass. 31, the passageway was expressly declared to be "for light and air;" and it was held that it could not be covered in whole or in part.

The cases of *Salisbury* v. *Andrews*, 128 Mass. 336, and *Attorney General* v. *Williams*, 140 Mass. 329, were decided upon the ground that the terms of the grants and the surrounding circumstances showed that the purpose was that the passageways in question

should be kept open and unobstructed, substantially as streets or courts, not only for the purpose of passing and repassing, but also for purposes such as streets are ordinarily used for, — for light, air, and prospect.

The rights of the parties in this suit, therefore, depend upon the construction of the grant to the plaintiff's grantors in 1832. It is a grant of "a right and privilege in common with me, my heirs and assigns, in a five feet passageway, leading from the northeasterly corner of said land to said Belknap Street." In the same breath, the grantor reserves to himself "the right and privilege of using as a passageway in common with said grantees, their heirs and assigns, a strip of land five feet wide across the northerly end of said granted premises, the said passageway to be maintained and supported at the common expense of the several abutters." The passageway reserved was a continuation of the passageway named in the grant to the plaintiff's grantors. The effect of the two clauses was to provide for a passageway running from Belknap Street (now Joy Street) in a westerly direction for a distance of ninety-six feet across the rear of the two lots now owned by the plaintiff and the defendant. It is only five feet in width, and has no outlet at the westerly end. It is too narrow to be used for horses and carriages, and clearly was not designed for such use. It is not of the character of a street or court. The purpose seems to have been to provide a narrow footway leading to the rear of the defendant's and plaintiff's lots, and of the lot next westerly of the plaintiff's, and of the lot on the northerly side of the way, designed for passing and repassing on foot and for carrying, in small vehicles, articles necessary for family use, and generally to be used as such ways are ordinarily used in a large city.

The grants to the plaintiff and to the other abutters contain no provision that the way is to be kept open to the sky for light, or air, or prospect. We cannot distinguish this case from the two cases above cited of *Atkins* v. *Bordman* and *Gerrish* v. *Shattuck ;* and are therefore of opinion that the plaintiff has not shown a right to have the passageway kept open and unobstructed from the ground upwards for its full width of five feet.

The provisions in subsequent deeds by Thorndike of other lots abutting on the passageway do not lead us to any other

conclusion; and we are not able to see how the fact that Perkins opened windows, overlooking the way, in his house on the lot north of it, has any material bearing on the case. He could not thereby acquire an easement of light and air. The defendant and his predecessors in title had no right to prevent his opening windows, and their silence cannot justly lead to the inference that the passageway was laid out for the purposes of light and air, and thus enlarge the grant to the plaintiff.

The question we have discussed is the only one argued by counsel, and we see no reason for disturbing the decree entered by the justice who heard the case. *Decree affirmed.*