PETER P. METTS,

Defendant below, Appellant,

*vs.*

JEREMIAH O'CONNELL,

Complainant below, Appellee.

*Supreme Court, on Appeal, Jan.* 16, 1923.

Where deed conveyed lot "with the use and privilege of a two feet wide alley," without limitation or restriction on grantee's use of alley, it was proper to consider language of grant in connection with purpose easement was to serve and intent of parties at time of grant as it appeared from surrounding circumstances in determining extent of easement.

Grant of "use and privilege of a two feet wide alley" *held* to entitle grantee to use alley as it had been used, including the right of access to cellar window and right to open and close window shutters.

Purchaser of lot took title subject to prior grant of easement to extent intended when visible and apparent and reasonably and fairly within terms of grant.

Owner of dominant estate *held* entitled to injunction restraining owner of servient estate from interfering, by construction of fence between alley and such dominant owner's premises, with his right of access to his property from the alley at all points.

APPEAL FROM COURT OF CHANCERY. This is an appeal from the decree of the Chancellor. The assignments of error are as follows:

1. The court erred in deciding in favor of the complainant and against the defendant.

2. The court erred in deciding that the defendant took title subject to the existing rights of the complainant which were granted by his deed and were physically apparent, and could not interfere with such rights by the fence as then constructed.

3. The court erred in deciding that the complainant was entitled to access to his land and every part of it as far back as the fence ran when he acquired title to his land, including access to his cellar window.

4. The court erred in deciding that the complainant was entitled to have the fence removed so that he might have full access

to his land as he had at the time he acquired it, and in decreeing that the same should be removed.

5. The court erred in decreeing that the costs of the case should be paid by the said defendant.

The statement of facts filed by the Chancellor with his opinion, so clearly sets forth the facts of the case that the statement together with the plot be filed, will be substantially adopted by this court. The plot is as follows:

Plot made by the Chancellor, not drawn to scale, and not accurate in some details, being intended to illustrate the opinion with which it is filed in the case of *O'Connell vs. Metts.*—C. M. C.

Peter P. Metts, respondent below, appellant, and Jeremiah O'Connell, complainant below, appellee, own adjoining houses on the south side of Gilpin avenue, west of Rodney street, in the city of Wilmington, and the dispute between them relates to the obstruction by the respondent below of the use of an alley two feet wide located on the land of the respondent. Both claim title

under John Barber, as the former owner of both houses at the same time. Barber devised both properties to his wife, Ellen Barber. She, in 1916, conveyed to the complainant below No. 1512 Gilpin avenue, "with the use and privilege of a two feet wide alley on the west of the above described lot in common with other adjoining owners forever." At that time there was a passage way two feet wide located on the land adjoining on the west, No. 1514 Gilpin avenue, running southerly from Gilpin avenue and covered over by the second story of the main building of the house erected thereon. The back part of the building on complainant's land did not occupy the whole lot, but the west wall thereof was about eight inches east of the westerly line of the lot. In the back of the main building there was a cellar window, and in the west wall of the rear building there were two windows on the first floor with shutters on the outside. At the rear of the back building is a doorway, and a door at the front of the house.

. At the time of the conveyance in 1916, there was a fence located entirely on the premises, No. 1514 Gilpin avenue, running southerly from the south wall of the main building on that lot, and about two feet from the division line between the two lots, to a point a few feet south of the end of the back building of the house on complainant's land. The fence then ran east about two feet to the division line between the premises and thence south to the end of that line. There was a gate in the fence giving access to the premises, No. 1514 Gilpin avenue.

The complainant at the time had access from Gilpin avenue through the covered part of the alley and thence to any part of his premises adjoining the alley up to the point where the fence was erected on the division line between the two premises, which point was a few feet south of the rear of his dwelling house. Thus he had access to the cellar window.

Under such conditions, Ellen Barker, in 1917, sold to the respondent below, No. 1514 Gilpin avenue, adjoining on the west, with no mention in the deed of the alley.

The respondent subsequently took down the existing fence and erected a new one, running along the division line between the two properties from the rear of the covered part of the alley to

the fence standing further to the rear, and put a gate in the fence a few feet south of the door in the rear of the house of the complainant. This gave the complainant access to his lot at the rear of his house, and excluded him from access to his cellar window and prevented him from putting coal through it into his cellar, and also prevented him from opening and closing the window shutters in the side wall of the rear building.

Being aggrieved by this interference with his alleged rights, the complainant filed a bill in the Court of Chancery·in and for New Castle county asking injunctive relief against the interference with his alleged right of access to his cellar window, and other parts of his property, and a mandatory order for the removal of the fence.

The Chancellor entered a decree imposing upon the respondent the duty to remove the fence.

Pennewill, C. J., and Rice, Harrington, Richards, and Rodney, JJ., sitting.

*George N. Davis*, for the appellant.

*J. Frank Ball* and *James Saulsbury*, for the appellee.

Rice, J., delivering the opinion of the court:

The complainant below, the appellee in this court, is the owner of the dominant estate, and the respondent below, the appellant here, is the onwer of the servient estate.

In the deed under which the complainant below took title to his land, he was granted "the use and privilege of a two feet wide alley on the west of the described premises in common with other adjoining owners forever." Whatever rights he had in the use of the alley were acquired under the grant in the deed. The alley as it existed at the time of the grant was full two feet in width, well-defined and in part paved. While the grantor, the predecessor in title of both parties to the suit, retained the fee in the alley at the time of the grant of the easement to the complainant, and later conveyed it to the respondent, yet the language of the grant is of the most general character, without limitation or restriction. It is broad enough to include any reasonable use to which the dominant tenement may be devoted,

that will not in any way interfere with the owner of the fee in the free and lawful enjoyment of his estate.

The grant being general in its terms, and without limitation or restriction upon the use of the alley by the grantee, it is proper, in determining the extent of the easement, to consider the language of the grant in connection with the purpose the easement was to serve; and the intention of the parties at the time of the grant, as the same may appear from the surrounding circumstances.

Since 1886 the alley has been used by the occupants of the premises later acquired by the complainant below, in common with the occupants of the adjoining premises on the west, and while both properties were owned by the same person there was no trouble over the use of the alley. It was used as a convenience to both dwelling-houses, and its use in connection with the premises acquired by the complainant was not limited to a mere right of way over the land, or as a means of ingress and egress only. It was used as a means of access to all parts of the premises adjacent to the uncovered portion of the alley, and as a convenience in the use of this house as a dwelling. The alley at the width granted being very narrow, the uncovered part was used at the time of the grant by the occupants of the premises 1512, as a passage way in connection with the strip of land eight inches wide adjacent thereto, and lying between the side wall of the rear building of the house 1512, and the division line between the two properties. One of the uses made of the alley and the adjoining strip of land was as a means of access to a cellar window in the rear of the main building on these premises, through which window coal was put into the cellar. This it would be impossible to do, if an obstruction of any kind should be erected on the division line. The strip of land eight inches wide was entirely too narrow to be used alone as a passage way, and unless used in conjunction with the alley could serve little, if any, useful purpose for the house. At the time of the grant there was no fence erected on the division line to interfere with the use made of the alley by the occupant of the premises 1512. With these conditions present and apparent, the then owner of both properties sold the property 1512 to the complainant, and in the deed of conveyance granted the use and privilege of the alley in common with other adjoining owners. That it

must have been the intention of the parties to the grant that the purposes for which the alley was to be used, and the extent of the use, should continue in the future the same as it had been at the time of the grant of the easement, would appear from the fact that the grantee, with knowledge on the part of the grantor, and without objection, used the alley in the manner and for the same purposes it had theretofore been used, namely, as a means of access to every part of his property adjoining the uncovered portion of the alley, and as a passage way in conjunction with the said narrow strip of land.

We, therefore, believe it clearly appears from the facts and circumstances surrounding the grant, including the use of the alley at the time, the evident purpose for which the grant was created, and the construction placed upon the grant at the time by the parties thereto, that it was the mutual intention of the parties that the grantee should have the right to use the alley in the same manner and for the same purposes it had been used at the time of the grant, and that the grantee had the right, under the grant, of access to any portion of his premises from every adjoining part of the uncovered portion of the alley.

The respondent below contended that if he is not permitted to continue the fence in its present location on the division line, the complainant below would have the use of the two feet wide alley on respondent's land, in connection with the strip of land eight inches wide on complainant's land, thus giving complainant the use of an alley two feet, eight inches wide along the uncovered portion of the alley, and if such had been the intention of the parties to the grant, it would and should have been expressed in the terms of the grant. We have already expressed our opinion on this point, to the effect that this strip of land on complainant's land was too narrow for any practical use in connection with his dwelling-house, if not used in connection with the alley, and was a reason why it had been so used at the time of the grant, and the fact that such use was continued by the grantee after the grant, with the knowledge of the grantor and without objection on her part, is a circumstance showing the intention of the parties with respect to the extent of the easement granted.

The respondent below also argued, at some length and cited

authorities, upon the law of implied easements, but we fail to see the application of that law to the facts of the present case.

With the rights of the grantee to the extent of the use of the alley determined as between the grantor and the complainant, when the respondent below purchased the adjoining property, including the fee in the alley, from the grantor, the respondent below took the title subject to the prior grant of the use of the alley, and the extent of the easement such as would be within the mutual intention of the parties to the grant, as the same were visible and apparent, provided, of course, that such intention was reasonably and fairly within the terms of the grant. And we are of the opinion that the grantee's rights with respect to the nature and extent of the easement created, as determined by the court below and by this court on appeal, are fairly within the terms of the grant and consistent with the language thereof.

We believe the grant in this case, under the particular facts, is broader than in those cases where the grant was of a right of way, or the right of ingress and egress, and, therefore, much of the law pertinent to those cases is not generally applicable to the facts of the present case. However, we believe we may profitably quote from two such cases, though the facts are different. In *Bowers v. Myers*, 237 *Pa.* 535, 85 *Atl.* 860, the court said:

"In case of doubt, the contemporaneous construction placed upon the contract by the parties is to be adopted."

And in *Burnham v. Nevins*, 144 *Mass.* 88, 10 *N. E.* 494, 59 *Am. Rep.* 61, it was said:

" * * * The extent of the easement claimed must be determined by the true construction of the grant or reservation by which it is created, aided by any circumstances surrounding the estate and the parties which have a legitimate tendency to show the intention of the parties."

The remaining question to be determined is whether or not the fence erected on the division line between the properties, by the owner of the fee in the alley, is an unreasonable interference with the use and privilege of the alley granted to the complainant.

Having already held under the terms of the grant that the complainant had the right of access to his property, from all adjacent points along the uncovered portion of the alley, the erec-

tion of any obstruction such as a fence on the division line between the alley and the premises of the complainant would prevent him from entering his premises at that point and would restrict him in the use of the alley and would, therefore, necessarily interfere with his full and free enjoyment of the easement granted. We are of the opinion that the Chancellor did not err in entering a decree perpetually restraining the respondent below from maintaining and continuing the fence in its present location, the same being an unreasonable and unlawful interference with the rights of the complainant in the use of the alley. In *Blanchard v. Maxson*, 84 *Conn.* 429, 80 *Atl.* 206, the court said:

"The fact that the defendant has never owned the fee to any part of the land covered by the land does not mitigate against his right to keep it free from obstructions. Any structure which could not properly be placed thereon, and which constituted an obstruction to his free and full use of the lane in his rightful [and free] enjoyment of the easement, would be removable by him as a nuisance. * * * The fact that the fence which he took down did not wholly prevent passage up and down the lane did not save it from being an unlawful obstruction. Erected as it was, without reasonable justification or purpose, it was a nuisance abatable by him, if it materially interfered with his reasonable enjoyment of the easement, or rendered that enjoyment less beneficial or convenient than before its erection."

And in the case of *Burnham v. Nevins, supra.* it was said:

"These general prinicples are that a man who owns land subject to an easement has the right to use his land in any way which is not inconsistent with the easement, but has no right to use it in a way which is inconsistent with the easement."

For the reasons stated the decree of the Chancellor is affirmed.